**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| AXIS SURPLUS | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Cause No.  14-cv-81 |
| | ) | |
| | ) | |
| MEITEC, INC., FIRE & SAFETY | ) | |
| SPECIALISTS, INC., NOBLE DRILLING | ) | |
| SERVICES, INC., KEPPEL AMFELS, | ) | |
| L.L.C., GRAY INSURANCE COMPANY, | ) | |
| ROGELIO GARZA, JR., YOLANDA | ) | |
| GARZA, INDIVIDUALLY AND | ) | |
| AS NEXT FRIEND OF ESMERALDA KARIEL | ) | |
| GARZA AND ROGELIO GARZA (III), | ) | |
| MINORS, AND RICARDO GARZA, FELIX | ) | |
| FUENTES, AND DANIEL MEDRANO, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**
**AND EQUITABLE SUBROGATION**

Plaintiff, AXIS SURPLUS INSURANCE COMPANY ("AXIS"), files this Complaint for Declaratory Judgment and equitable subrogation against Defendants MEITEC, INC., FIRE & SAFETY SPECIALISTS, INC., NOBLE DRILLING SERVICES, INC., KEPPEL AMFELS, L.L.C., GRAY INSURANCE COMPANY, ROGELIO GARZA, JR., YOLANDA GARZA, INDIVIDUALLY AND AS NEXT FRIEND OF ESMERALDA KARIEL GARZA AND ROGELIO GARZA (III), MINORS, AND RICARDO GARZA, FELIX FUENTES, AND DANIEL MEDRANO, and respectfully states as follows:

1

## NATURE OF ACTION

1.        Defendant GRAY INSURANCE COMPANY ("Gray Insurance") is an insurance company that issued commercial general liability Policy Number XSGL-07330 to Defendant MEITEC, INC. ("Meitec") as Named Insured for the policy period of September 1, 2010 through September 1, 2013, with limits of $1 million per occurrence and $3 million in the PCO aggregate ("the Gray Primary Policy").  The Gray Primary Policy is attached hereto as **Exhibit A**.

2.        GRAY INSURANCE also issued excess liability Policy Number GXS-042664 to MEITEC for the policy period of September 1, 2011 to September 1, 2012, with a limit of $4 million per occurrence and in the aggregate ("the Gray Excess Policy").  The Gray Excess Policy sits above the Gray Primary Policy and is attached hereto as **Exhibit B**.

3.        Plaintiff AXIS is an insurance company that issued excess liability policy number EAU754667/01/2011 to MEITEC as Named Insured for the policy period of September 1, 2011 to September 1, 2012, with a limit of $6 million per occurrence and in the aggregate ("the AXIS Excess Policy").  A copy of the AXIS Excess Policy is attached hereto as **Exhibit C**.  The AXIS Excess Policy generally follows form to the Gray Excess Policy, and sits above the $5,000,000 in combined coverage afforded by the Gray Primary and Excess Policies.

4.        Defendants ROGELIO GARZA, JR., YOLANDA GARZA, INDIVIDUALLY AND AS NEXT FRIEND OF ESMERALDA KARIEL GARZA and ROGELIO GARZA (III), MINORS, and RICARDO GARZA, FELIX FUENTES, and DANIEL MEDRANO (collectively, "Underlying Plaintiffs") initiated a lawsuit in the 357th Judicial District Court, Cameron County, Texas, styled *Rogelio Garza, Jr., Yolanda Garza, individually and as next friend of Esmeralda Kariel Garza and Rogelio Garza (III), minors, and Ricardo Garza, Felix Fuentes, and Daniel*

2

*Medrano, v. Fire & Safety Specialists, Inc., Noble Drilling services, Inc., and Keppel AmFELS, L.L.C.*, Cause Number 2012-DCL-6691-E ("Underlying Lawsuit") against Defendants FIRE & SAFETY SPECIALISTS, INC. ("F&SS"), NOBLE DRILLING SERVICES, INC. ("Noble"), and KEPPEL AMFELS, L.L.C. ("AmFELS") (collectively, "Underlying Defendants"). The Underlying Lawsuit stems out of an event which occurred on April 26, 2012, and was originally filed on September 19, 2012.  A Copy of Underlying Plaintiffs' Third Amended Original Petition is attached hereto as **Exhibit D**.

5.     The Underlying Defendants tendered the defense and indemnity of the Underlying Lawsuit to MEITEC on or about August 29, 2013 pursuant to a Master Service Contract entered by and between NOBLE and MEITEC.

6.     After withdrawal of its denial of tender of the Underlying Lawsuit, GRAY INSURANCE accepted the tender on behalf of MEITEC and, pursuant to the Gray Primary Insurance Policy, agreed to defend the Underlying Defendants as respects the Underlying Lawsuit.

7.     Upon information and belief, a judgment has been or will be entered against one or more Underlying Defendants in the Underlying Lawsuit which exceeds the $5,000,000 in coverage afforded by the Gray Primary Policy and Gray Excess Policy, and therefore the Underlying Defendants seek access to the $6,000,000 AXIS Excess Policy limits for purposes of satisfying said judgment.

8.     Plaintiff brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a judicial declaration of its rights and duties as to the coverage available for this loss under the AXIS Excess Policy.

Making such a declaration on the coverage available under the AXIS Excess Policy will confer certainty on the parties with respect to their rights and obligations under the AXIS Excess Policy, and therefore, will serve the interests of justice.

9.     There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the AXIS Excess Policy. Plaintiff contends coverage is precluded as to the AXIS Excess Policy as a result of Defendants' violation of the Notice Condition set forth in the AXIS Excess Policy.  Alternately, Plaintiff contends that coverage is precluded by various provisions and exclusions contained in the Gray and AXIS Policies.  Alternately, Plaintiff contends that if this Court finds there is coverage under the AXIS Excess Policy for this loss, that Plaintiff's liability for the claims against the underlying Defendants is limited to $1,000,000.  Plaintiff further contends that if this Court finds there is coverage under the AXIS Excess Policy, it is entitled to equitable subrogation as against GRAY INSURANCE COMPANY.   Conversely, Defendants contend that the full AXIS Excess Policy $6,000,000 per occurrence limit applies towards satisfaction of any judgment that has been or will be entered against the Underlying Defendants in the Underlying Lawsuit.

10.     Plaintiff has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the AXIS Excess Policy.  A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain its rights and duties with respect to indemnity under the AXIS Excess Policy.

11.     Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial portion of the events giving rise to the claim occurred in Cameron County, Texas.

## PARTIES

13.     Plaintiff AXIS is a corporation organized and existing under the laws Illinois with its principal place of business in Alpharetta, Georgia.

14.     Defendant MEITEC is a corporation organized and existing under the laws of Louisiana with its principal place of business in Metairie, Louisiana.

15.     Defendant F&SS is a corporation organized and existing under the laws of Louisiana with its principal place of business in Maurice, Louisiana.

16.     Defendant NOBLE is a corporation organized and existing under the laws of Delaware with its principal place of business in Sugar Land, Texas.

17.     Defendant AMFELS is a Texas Limited Liability Company.  On information and belief, AMFELS' principal place of business is in Texas, and all members are citizens of Texas.

18.     Defendant GRAY INSURANCE is a corporation organized and existing under the laws of Louisiana with its principal place of business in Metairie, Louisiana.

19.     Upon information and belief, Defendant ROGELIO GARZA, JR., is a citizen of Hidalgo County, Texas.  ROGELIO GARZA, JR., is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure, and so that he may be bound by the judgment entered in this case.  If Defendant ROGELIO GARZA, JR., executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiff will voluntarily dismiss ROGELIO GARZA, JR., from this action.

20.     Upon information and belief, Defendant YOLANDA GARZA is a citizen of Hidalgo County, Texas.  YOLANDA GARZA, individually and as next friend of ESMERALDA KARIEL GARZA AND ROGELIO GARZA (III), is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case.  If Defendant YOLANDA GARZA, individually and as next friend of ESMERALDA KARIEL GARZA AND ROGELIO GARZA (III), executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiff will voluntarily dismiss YOLANDA GARZA, individually and as next friend of ESMERALDA KARIEL GARZA AND ROGELIO GARZA (III), from this action.

21.     Upon information and belief, Defendant RICARDO GARZA is a citizen of Hidalgo County, Texas.  RICARDO GARZA is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure, and so that he may be bound by the judgment entered in this case.  If Defendant RICARDO GARZA executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiff will voluntarily dismiss RICARDO GARZA from this action.

22.     Upon information and belief, Defendant FELIX FUENTES is a citizen of Cameron County, Texas.  FELIX FUENTES is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure, and so that he may be bound by the judgment entered in this case.  If Defendant FELIX FUENTES executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiff will voluntarily dismiss FELIX FUENTES from this action.

23.     Upon information and belief, Defendant DANIEL MEDRANO is a citizen of Cameron County, Texas.  DANIEL MEDRANO is joined as a defendant herein as a necessary party and so that he may be bound by the judgment entered in this case.  DANIEL MEDRANO is a necessary party to this action pursuant to Rule 19 of the Federal Rules of Civil Procedure.   If Defendant DANIEL MEDRANO executes a stipulation agreeing to be bound by any judgment entered herein, Plaintiff will voluntarily dismiss DANIEL MEDRANO from this action.

## THE POLICIES

24.     GRAY INSURANCE issued a Commercial General Liability Policy to MEITEC, Policy Number XSGL-07330, effective September 1, 2010 through September 1, 2013, with limits of $1,000,000 per occurrence and $3,000,000 in the PCO aggregate (the "Gray Primary Policy").  See, **Ex. A.**

25.     GRAY INSURANCE issued an Excess Liability Policy to MEITEC, Policy Number GXS-042664, effective September 1, 2011 through September 1, 2012, with limits of $4,000,000 per occurrence and in the aggregate (the "Gray Excess Policy").  See, **Ex. B.**

26.     AXIS issued Excess Liability Policy Number EAU754667/01/2011 to MEITEC, effective September 1, 2011 to September 1, 2012, with limits of  $6,000,000 per occurrence and in the aggregate (the "AXIS Excess Policy").  See, **Ex. C.**  The AXIS Excess Policy is an excess policy and, except as otherwise stated in the AXIS Excess Policy, follows the terms, conditions, exclusions, and endorsements of the underlying Gray Excess Policy issued to MEITEC, Policy Number GXS-042664.  *Id.*

## FACTUAL BACKGROUND

27. The *Noble Sam Noble* is a mobile offshore drilling unit operated and maintained by NOBLE.  NOBLE hired MEITEC pursuant to a Master Service Contract to perform electrical work on the *Noble Sam Noble* at a shipyard in Brownsville, Texas operated by AMFELS.  NOBLE also hired F&SS to inspect and repair the high-pressure carbon dioxide fire-extinguishing system on the *Noble Sam Noble* at the AMFELS shipyard.

28. On April 26, 2012, ROGELIO GARZA, JR., RICARDO GARZA, FELIX FUENTES, and DANIEL MEDRANO were working for MEITEC as electricians on the *Noble Sam Noble* at the same time F&SS technicians were working on the vessel's fire suppression system.

29. The Underlying Lawsuit alleges ROGELIO GARZA, JR., RICARDO GARZA, FELIX FUENTES, and DANIEL MEDRANO were injured when one of the technicians employed by F&SS triggered the *Noble Sam Noble*'s carbon dioxide fire-extinguishing system, flooding the engine room where ROGELIO GARZA, JR., RICARDO GARZA, FELIX FUENTES, and DANIEL MEDRANO were working.

30. According to the Underlying Lawsuit, the four individuals "quickly lost consciousness as they struggled to … escape the engine room."  See, **Ex. D.**  Underlying Plaintiffs allege ROGELIO GARZA, JR., RICARDO GARZA, FELIX FUENTES, and DANIEL MEDRANO suffered hypercapnia, hypoxic brain injury, traumatic brain injury, and lesser traumatic injuries as a result of the carbon dioxide poisoning.  *Id*.

31. At the time of the accident, MEITEC was party to a Master Service Contract ("MSC") with NOBLE to perform certain work related to NOBLE's performance of "the

business of drilling or reworking oil and gas and other wells on a contract basis for other companies." See, MSC, attached hereto as **Exhibit E**.

32.     The MSC contains mutual indemnity obligations which require MEITEC to defend and indemnify NOBLE and its contractors against all claims, demands, and causes of action of every kind and character, without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties, including the sole, joint or concurrent negligence of NOBLE or its contractors, arising in favor of MEITEC's employees on account of personal injury. The parties agreed to support the mutual indemnity obligations contained in the MSC by obtaining general liability insurance "equal to that shown in Section 6." The sole policy limits provided in Section 6 of the MSC are $1,000,000 in primary coverage and $5,000,000 in excess coverage (i.e., $6,000,000 total coverage).  **Ex. E.**

33.     The MSC also contains insurance requirements which require that to the extent MEITEC assumes liability in the MSC and agrees to indemnify NOBLE, MEITEC name NOBLE as an additional insured on MEITEC's primary and excess insurance policies.

34.     On August 29, 2013, after Underlying Plaintiffs' lawsuit was filed, counsel for NOBLE tendered the Underlying Lawsuit to MEITEC on behalf of NOBLE, AMFELS, and F&SS, seeking a defense and indemnity for the Underlying Defendants pursuant to the MSC. The August 29, 2013 correspondence states:  "Noble specifically calls upon Meitec to notify its insurers of their obligations in this regard and to provide the undersigned with copies of all insurance policies required under the [MSC]."  The August 29, 2013 correspondence is attached hereto as **Exhibit F**.

35. By correspondence dated September 17, 2013, GRAY INSURANCE responded to the August 29, 2013 correspondence, denying coverage to the Underlying Defendants for the Underlying Lawsuit and declining to provide a defense. See, **Exhibit G**.

36. By correspondence dated October 9, 2013, counsel for NOBLE wrote to MEITEC addressing the September 17, 2013 GRAY INSURANCE correspondence and inquiring as to MEITEC's position on NOBLE's tender on behalf of NOBLE, AMFELS, and F&SS. The October 9, 2013 correspondence is attached hereto as **Exhibit H**.

37. The October 9, 2013 correspondence states: "Meitec was required to obtain insurance in favor of Noble, including a $1,000,000 comprehensive general liability policy and a $5,000,000 excess umbrella policy." See, **Ex. H**.

38. The October 9, 2013 correspondence further states: "Noble specifically calls upon Meitec to: … (ii) Provide the undersigned with a complete copy of Axis Surplus Insurance Co. policy EAU754667/01/2011, along with all schedules and endorsements." **Ex. H**.

39. By correspondence dated October 30, 2013, GRAY INSURANCE advised counsel for NOBLE that it "has reconsidered its initial coverage position and will agree to provide [the Underlying Defendants] with a defense in the [Underlying Lawsuit] subject to the terms and conditions of the policies of insurance." See, **Exhibit I**.

40. The October 30, 2013 correspondence further advises NOBLE that "Gray has the right to select defense counsel" and that Gray has retained law firm Brown Sims, P.C. to represent the Underlying Defendants in the Underlying Lawsuit. See, **Ex. I**.

41. Upon information and belief, a docket control order entered on or about December 2013 scheduled trial to begin on April 21, 2014.

42. Upon information and belief, on or about December 2013, counsel for the Underlying Plaintiffs communicated to GRAY INSURANCE that ROGELIO GARZA, JR.'s damages exceeded the $5,000,000 in coverage afforded by the Gray Policies.

43. Upon information and belief, the parties to the Underlying Lawsuit participated in mediation on February 25, 2014 during which the Underlying Plaintiffs' final global demand exceeded the limits of the Gray Primary and Gray Excess Policies.[1] The Underlying Lawsuit did not settle at the February 25, 2014 mediation.

44. Upon information and belief, on April 4, 2014 the Underlying Plaintiffs issued a purported *Stowers* Demand to each individual Underlying Defendant. The demands on F&SS and NOBLE exceeded the limits of the Gray Primary and Gray Excess Policies while the demand on AMFELS was within the limits of the Gray Policies.

45. After close of business (approximately 7:00 P.M. Eastern Standard Time) on April 15, 2014, 23 months after the loss, GRAY INSURANCE provided first notice of the subject loss and Underlying Lawsuit to Plaintiff through a broker.

46. By correspondence dated April 16, 2014, and without consultation with AXIS, counsel for the Underlying Defendants rejected the three purported *Stowers* demands without consulting Plaintiff.

---

[1] Plaintiff has intentionally omitted specific details concerning the settlement demands made on the Underlying Defendanst as those communications relate to privileged and confidential settlement negotiations. Upon entry of an adequate protective order or other sufficient protections, Plaintiff will disclose in more detail the amounts demanded by the Underlying Plaintiffs as necessary and required by the Court.

47.     Also on April 16, 2014, Plaintiff was advised by underlying defense counsel that trial of the Underlying Suit was firmly scheduled to proceed two business days later, on April 21, 2014 at 8:30 A.M.

48.     At the time of first notice to Plaintiff, central file materials comprising the defense file for the Underlying Lawsuit were being shipped to a hotel near the trial site in Brownsville, Texas from defense counsel's office in Houston and were not available for Plaintiff to review.

49.     Upon information and belief, prior to trial, defense counsel filed a motion to designate MEITEC as a responsible third party.

50.     During the Underlying trial, AMFELS corporate representative Alaniz testified that F&SS and NOBLE were wholly liable for the accident through their negligent acts and omissions.

51.     The trial of the Underlying Lawsuit has resulted or will result in a judgment in excess of the $5,000,000 in coverage afforded by the Gray Primary and Excess Policies against one or more Underlying Defendants.

52.     A dispute concerning the available coverage has arisen wherein the Underlying Defendants seek to satisfy the judgment that has been or will be entered against one or more Underlying Defendants in the Underlying Lawsuit which exceeds the limits of the Gray Primary and Excess Policies by applying the full policy limits of the AXIS Excess Policy ($6,000,000).

53.     Plaintiff seeks a declaration of its rights and duties under the AXIS Excess Policy, namely, that coverage is precluded under the AXIS Excess Policy based on Defendants' violation of the AXIS Excess Policy Notice Condition, or, alternately, that provisions and exclusions of the AXIS Excess Policy apply to preclude coverage.  In the alternative, if this

Court finds the Underlying Defendants are entitled coverage under the AXIS Excess Policy, AXIS seeks a declaration that said coverage is limited to the $1,000,000 required by the MSC. Furthermore, AXIS alternatively alleges negligence against GRAY INSURANCE by way of equitable subrogation.

54.     For the reasons set forth above, an actual controversy exists between the AXIS, MEITEC, NOBLE, F&SS, AMFELS, and GRAY INSURANCE.

**COUNT I:**
**DECLARATORY JUDGMENT**
**(Violation of Notice Condition against MEITEC, NOBLE, AMFELS, and F&SS)**

55.     This paragraph incorporates and re-alleges the preceding paragraphs 1 through 54 as if fully stated and set forth herein.

56.     Sub-section 4 ("Duties in the Event of Occurrence, Offense, Wrongful Act, Error, Omission, Claim or Suit") of Section V (Conditions) of the AXIS Excess Policy Provides:

4.     Duties in the Event of Occurrence, Offense, Wrongful Act, Error, Omission, Claim or Suit:

a.  You must see to it that we are notified as soon as practicable of an Occurrence, Offense, Wrongful Act, Error, or Omission, which may result in a Claim.  To the extent possible, notice should include:

1.  How, when and where the occurrence, offense,  wrongful act, error, or omission took place;
2.  The names and addresses of any injured persons and witnesses;
3.  The nature and location of any injury or damage arising out of the occurrence, offense, wrongful act, error or omission.

b.  If a claim is made or suit is brought against any insured, you must:

1. Immediately record the specifics of the claim or suit and the date received; and
2. Notify us as soon as practicable.

You must see to it that we receive written notice of a claim or suit as soon as practicable.

c. You and any other involved insured must:

1. Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or suit;
2. Authorize us to obtain records and other information;
3. Cooperate with us in the investigation or settlement of the claim or defense against the suit; and
4. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**Ex. C.**

57.     As set forth in greater detail above, notice was provided to Plaintiff three business days before trial, 23 months after the date of loss, 18 months after the Underlying Lawsuit was filed, after mediation was conducted wherein a demand was made in excess of the Gray Policies, and after purported *Stowers* demands were issued to the Underlying Defendants which collectively exceeded the coverage provided by the Gray Policies.

58.     MEITEC, NOBLE, AMFELS, and F&SS therefore violated the foregoing Notice Condition to Coverage by failing to notify Plaintiff as soon as practicable of an Occurrence, Offense, Wrongful Act, Error, or Omission, which may result in a Claim, and by failing to notify Plaintiff as soon as practicable when a claim was made or suit was brought against any insured.

14

59.     For all the reasons articulated within the back ground section, which may not be exhaustive, MEITEC, NOBLE, AMFELS, and F&SS' violation of the Notice Condition directly resulted in substantial prejudice to Plaintiff.

60.     Accordingly, there is no coverage for the subject loss based MEITEC, NOBLE, AMFELS, and F&SS' violation of the Notice Condition of the AXIS Excess Policy.

WHEREFORE, Plaintiff seeks a declaration that there is no coverage available under the AXIS Excess Policy as to the Underlying Lawsuit based on MEITEC, NOBLE, AMFELS, and F&SS' violation of the Notice Condition to coverage; and for any other relief that the Court deems just.

**IN THE ALTERNATIVE**
**COUNT II:**
**DECLARATORY JUDGMENT**
**(Pollution Exclusion Precludes Coverage against MEITEC, NOBLE, AMFELS, and F&SS)**

61.     This paragraph incorporates and re-alleges the allegations of paragraphs 1 through 54 as if fully stated and set forth herein.

62.     Section III. Exclusions of the AXIS Excess Policy provides as follows:

Any exclusions applicable to the "first underlying insurance" and to any other "underlying insurance" also apply to this insurance.  In addition, this insurance does not apply to:

1. Pollution
   a. Any liability or damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
      (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.
                              * * *

Section VI. DEFINITIONS of the AXIS Excess Policy provides:

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

**Ex. C.**

63.   The Underlying Lawsuit alleges:

**22.** In the early afternoon of April 26, 2012, one of the technicians employed by F&SS suddenly and without warning triggered the *Sam Noble*'s $CO_2$ fire-extinguishing system by dropping a wrench onto one of the cylinder actuator valves from which the safety cap had been removed.   Within seconds this flooded the engine room with a high concentration of blinding $CO_2$ gas. Rogelio Garza, Jr., Felix Fuentes, Ricardo Garza, and Daniel Medrano quickly lost consciousness as they struggled to descend from the scaffolding and escape from the engine room.   All four these [sic] Plaintiffs eventually were rescued by other personnel working on the *Sam Noble*, but not before they suffered hypercapnia, hypoxic brain injury, as well as lesser traumatic injuries, all as a result of $CO_2$ poisoning.

**Ex. D.**

64.   Liability that has been or will be assigned to one or more of the Underlying Defendants arises out of the discharge, release, or escape of carbon dioxide gas.  Carbon dioxide gas satisfies the AXIS Excess Policy definition of "pollutant."

65.   Employees of Named Insured MEITEC were occupying the engine room of the *Noble Sam Noble* when the "pollutant" was released.   Furthermore, the putative additional insureds operated and maintained the *Noble Sam Noble*, thus occupying it.

66.   Accordingly, the Pollution Exclusion applies to preclude coverage for the subject loss.

WHEREFORE, Plaintiff seeks a declaration that there is no coverage available under the AXIS Excess Policy as to the Underlying Lawsuit because the Pollution Exclusion applies to preclude coverage; and for any other relief that the Court deems just.

**IN THE ALTERNATIVE**
**COUNT III:**
**DECLARATORY JUDGMENT**
**(Watercraft Exclusion Precludes Coverage against MEITEC, NOBLE, AMFELS, and**
**F&SS)**

67.     This paragraph incorporates and re-alleges the allegations of paragraphs 1 through 54 as if fully stated and set forth herein.

68.     The Gray Excess Policy, and therefore the AXIS Excess Policy, is subject to the following exclusion:

> V.     To any liability whatsoever not covered by the underlying insurances as set out in the attached schedule; provided, however, that this exclusion shall not apply to the extent that any such liability would have been covered under any of such underlying insurances had an aggregate limit applicable to such underlying insurance(s), and which is stated in the attached schedule to be an aggregate limit of liability, not been exhausted.

**Ex. B.**

69.     There is no coverage under the Gray Excess Policy and therefore the AXIS Excess Policy for liability not covered by the Gray Primary Policy.

70.     The Gray Primary Policy contains the following exclusion:

> g.     "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

**Ex. A.**

71.     Pursuant to exclusion g., there is no coverage under the AXIS Excess Policy for "bodily injury" arising out of the maintenance of any watercraft operated by any insured.  **Ex. A.**

72.     The accident in question arose out of the maintenance of a watercraft, the *Noble Sam Noble*, which is operated by putative additional insured NOBLE.

73.     Accordingly, to the extent that NOBLE qualifies as an "insured" or "additional insured," coverage is precluded under the AXIS Excess Policy for liability that has been or will be assigned to one or more of the Underlying Defendants in the Underlying Lawsuit.

WHEREFORE, Plaintiff seeks a declaration that there is no coverage available under the AXIS Excess Policy as to the Underlying Lawsuit because the Watercraft Exclusion applies to preclude coverage; and for any other relief that the Court deems just.

## IN THE ALTERNATIVE
## COUNT IV:
## DECLARATORY JUDGMENT
## (Punitive Damages are Excluded From Coverage against MEITEC, NOBLE, AMFELS, and F&SS)

74.     This paragraph incorporates and re-alleges the allegations of paragraphs 1 through 54 as if fully stated and set forth herein.

75.     Coverage under the Gray Excess Policy, and therefore the AXIS Excess Policy, is subject to the following exclusion:

THIS POLICY SHALL NOT APPLY:
* * *
U.      To liability for fines, penalties, punitive or exemplary damages, including treble damages or any other damages resulting from multiplication of compensatory damages.

**Ex. B.**

76.     Pursuant to Exclusion U., the AXIS Excess Policy does not provide coverage for any punitive or exemplary damages that have been or will be assessed in the Underlying Lawsuit in connection with claims of gross negligence or otherwise.

WHEREFORE, Plaintiff seeks a declaration that there is no coverage available under the AXIS Excess Policy as to the Underlying Lawsuit for punitive damages; and for any other relief that the Court deems just.

## IN THE ALTERNATIVE
### COUNT V:
### DECLARATORY JUDGMENT
### (F&SS Does  Not Qualify As An Insured or Additional Insured against F&SS)

77.     This paragraph incorporates and re-alleges the allegations of paragraphs 1 through 54 as if fully stated and set forth herein.

78.     The AXIS Excess Policy provides as follows:

Throughout this policy, the words "you", "your" and "Named Insured" refer to the "Named Insured" shown in Item 1. of the Declarations.

**Ex. C.**

79.     The Named Insured shown in Item 1. of the Declarations is MEITEC.  Neither NOBLE, AMFELS, nor F&SS qualify as the Named Insured under the AXIS Excess Policy.

80.     The Gray Excess Policy and therefore the AXIS Excess Policy is subject to the following definition:

A.     **INSURED**
The unqualified word "Insured", wherever used in this Policy, includes: -
\* \* \*
(3) any person, organization, trustee or estate to whom the Named Insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent of such obligation and in respect of operations by or on behalf of the

Named Insured or of facilities of the Named Insured or of facilities used by the Named Insured.

* * *

**Ex. B.**

81.    Article 6 of the Noble/Meitec MSC provides:

6.3    To the extent Contractor assumes liability hereunder, and agrees to indemnify Noble and if Contractor is working as Noble's subcontractor, any customer for whom Noble is performing services, both Noble and Noble's customer shall be named as an additional insured in such insurance policies (with the exception of Workers' Compensation coverage).

**Ex. E.**

82.    MEITEC did not contractually agree in the MSC to name F&SS or AMFELS as additional insureds in the MSC.  Therefore, F&SS and AMFELS do not qualify as "insureds" under the AXIS Excess Policy pursuant to the terms of the AXIS Excess Policy and MSC.

83.    AMFELS and MEITEC executed a Master Service Agreement which served to add MEITEC to AMFELS' approved list of contractors for use in AMFELS' performance of "business of construction and other activities, at its facilities in Brownsville, Texas and other worldwide areas including offshore locations, on a contract basis for other companies or for its own account" ("MSA").  The MSA is attached hereto as **Exhibit J.**

84.    Exhibit "C" of the MSA ("Insurance Required of Contractor) provides:

Further, the Company Group shall be named as additional insureds in all policies carried by Contractor, whether or not required herein, other than the Worker's Compensations and Employers' Liability Insurances.

**Ex. J.**

85.    The MSA defines the "Company Group" to include AMFELS

20

and its customers, their respective joint venturers, co-lessees, partners, parents, subsidiaries, affiliates, and interrelated companies, and their respective officers, directors, agents, employees, and representatives, and any other parties or companies designated by Company to Contractor, and to the extent required by any present or future contract to which Company is a party the contractors, subcontractors, vendors, and suppliers of any of the foregoing.

**Ex. J.**

86.     MEITEC did not contractually agree to name F&SS as an additional insured in the MSA.

87.     Accordingly, F&SS does not qualify as an "insured" as that term is defined by the Gray Excess Policy and therefore the AXIS Excess Policy.

WHEREFORE, Plaintiff seeks a declaration that there is no coverage available under the AXIS Excess Policy as to F&SS for the Underlying Lawsuit as it does not qualify as an "insured" or "additional insured;" and for any other relief that the Court deems just.

**IN THE ALTERNATIVE**
**COUNT VI:**
**DECLARATORY JUDGMENT**
**(Available Limits of Coverage Under AXIS Excess Policy are $1,000,000 as to MEITEC, NOBLE, AMFELS, and F&SS)**

88.     This paragraph incorporates and re-alleges the allegations of paragraphs 1 through 54 as if fully stated and set forth herein.

89.     The Noble/Meitec MSC contains the following Indemnification provisions:

**7.0 INDEMNITY**

    7.1     Contractor agrees to protect, defend, indemnify and hold harmless Noble, and its parent, subsidiary and affiliated companies, officers, directors, employees and customers, its contractors, subcontractors of any tier, or invitees (collectively, the "Noble Indemnitees") from and against all damages, liabilities, losses, costs, expenses (including attorney's fees), claims, demands, and causes of actions of every kind and character, without regard to the cause or causes

thereof or the negligence or fault (active or passive) of any party or parties, including the sole, joint or concurrent negligence of the Noble Indemnitees, arising in favor of Contractor's employees, Contractor's subcontractors or their employees, or Contractor's invitees on account of personal injury, death or damage to property.

*\*\**

7.7   In the event and to the extent that certain work or service under this Contract is subject to Chapter 127 of the Texas Civil Practice and Remedies Code, and so long as that Statute is in force, then it is agreed as respects that certain work or service, that the obligations herein to indemnify are limited to the maximum obligation allowed by law, including any exceptions to such limitation, and each party covenants and agrees to support said limitation of any mutual indemnity obligations hereunder by available liability insurance coverage to be furnished by Contractor and Noble, equal to that shown in Section 6 herein, and provided further that as respect to any unilateral indemnity obligations of Contractor hereunder, Contractor agrees to support limitation of same by available liability insurance coverage to be furnished by Contractor, and the limits of liability insurance required of the parties in those limited circumstances are amended to the maximum amount allowed by said law.

**Ex. E.**

90.   The MSC contains the following insurance requirements:

**6.0   INSURANCE**

6.1   Contractor will furnish to Noble a certificate or certificates evidencing the insurance coverages listed below.  Contractor covenants and agrees that for the term of this Agreement, Contractor shall not and shall not permit any such insurance to be canceled, altered or amended without thirty (30) days' prior notice to Noble in writing.  If any such change is not acceptable to Noble in its sole discretion, it may terminate this Agreement and any then pending work order without additional compensation or obligation to Contractor.

*\*\**

B.   Comprehensive General Liability   1.   Minimum policy limit of $1,000,000 per occurrence.

2.   Deletion of all watercraft exclusions.

| | | | |
|---|---|---|---|
| | | 3. | Blanket contractual liability coverage for all liability, indemnity and hold harmless provisions assumed under this contract. |
| C. | Excess Umbrella Liability | 1. | Minimum policy limit of $5,000,000 per occurrence. |

**Ex. E.**

91.     NOBLE and MEITEC contractually agreed to support the mutual indemnity obligations set forth in the MSC by obtaining general liability insurance "equal to that shown in Section 6." **Ex. E.**

92.     The sole policy limits provided in Section 6 of the MSC are $1,000,000 in primary coverage and $5,000,000 in excess coverage (i.e., $6,000,000 total coverage). **Ex. E.**

93.     As the Gray Primary and Excess Policies provide a total of $5,000,000 in coverage, the applicable limit of liability under the AXIS Excess Policy for purposes of coverage and indemnity flowing through the MSC is therefore $1,000,000.

WHEREFORE, Plaintiff seeks a declaration that coverage under the AXIS Excess Policy for any judgment that has or will be entered in the Underlying Lawsuit is limited to $1,000,000 above the $5,000,000 provided by the Gray Primary and Gray Excess Policies, as required of MEITEC in the MSC; and for any other relief that the Court deems just.

<u>**IN THE ALTERNATIVE**</u>
<u>**COUNT VII:**</u>
<u>**Equitable Subrogation:  Negligence against GRAY INSURANCE**</u>

94.     This paragraph incorporates and re-alleges the preceding paragraphs 1 through 55 as if fully stated and set forth herein.

95.     GRAY INSURANCE's action of undertaking the defense of the Underlying Defendants gives rise to a duty of reasonable performance.

96.     GRAY INSURANCE's failure to provide the Underlying Defendants with separate counsel and/or failure to advise the Underlying Defendants as to the conflict inherent in defense counsel, Brown Sims, P.C.'s joint representation of all Underlying Defendants constitutes of breach of GRAY INSURANCE's duty of reasonable performance to the Underlying Defendants.

97.     GRAY INSURANCE's negligent handling of the Underlying Defendants' defense proximately caused injury to each respective Underlying Defendant in the form of exposure to the excess judgment which has been or will be entered against one or more Underlying Defendants in the Underlying Lawsuit.

98.     In the event Plaintiff is found to have a legal obligation to pay the loss under the AXIS Excess Policy, Plaintiff, as subrogee of one or more of the Underlying Defendants, is entitled to damages resulting from GRAY INSURANCE's negligence.

WHEREFORE, Plaintiff seeks all sums that have been or will be entered against the Underlying Defendants in the Underlying Lawsuit which exceed the $5,000,000 afforded by the Gray Primary and Gray Excess Policies.

**JURY DEMAND**

Plaintiff, AXIS SURPLUS INSURANCE COMPANY, demands the right to trial by jury on all issues so triable.

Dated this 15th day of May, 2014.

Respectfully submitted,

**TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**


/s/ Michael S. Knippen

_____

Michael S. Knippen (#788787)
303 West Madison Street
Suite 1200
Chicago, Illinois  60606
Tel.:  (312) 332-3900
Fax.:  (312) 332-3908
*Attorneys for Plaintiff AXIS SURPLUS*
 *INSURANCE COMPANY*